IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 16, 2016 Session at Union University[1]

**STATE OF TENNESSEE v. TRAVIS TATE**

**Appeal from the Criminal Court for Shelby County**
**No. 13-00846    W. Mark Ward, Judge**

_____

**No. W2014-02102-CCA-R3-CD  -  Filed May 31, 2016**

_____

Defendant, Travis Tate, appeals from his convictions of second degree murder, attempted voluntary manslaughter, and employment of a firearm during the commission of a dangerous felony and from his effective sentence of forty years.  Defendant raises the following issues on appeal: (1) whether there was sufficient evidence to support the convictions; (2) whether the trial court erred by admitting hearsay evidence at trial; (3) whether the trial court inaccurately advised Defendant during the *Momon* hearing; (4) whether the trial court erred by refusing to instruct the jury on self-defense; (5) whether the trial court erred by instructing the jury to correct its verdict on employment of a firearm; and (6) whether the trial court abused its discretion during sentencing.  We affirm the judgments of the trial court with respect to the first two convictions, but we modify the judgment with respect to the employment of a firearm conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part, Modified in Part**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Michael E. Scholl (on appeal), Memphis, Tennessee; Stephen C. Bush, District Public Defender; and Jim Hale and Trent Hall, Assistant Public Defenders, for the appellant, Travis Tate.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Greg Gilbert and Omar Malik, Assistant District Attorneys General, for the appellee, State of Tennessee.

---

[1] This case was heard on the campus of Union University as a special project of the Tennessee Court of Criminal Appeals in furtherance of the educational process of students and faculty.

## OPINION

### I. Procedural History and Factual Summary

This is Defendant's direct appeal from his convictions for causing the death of Demarcus Smith and the injury of Kevin Miller at a BP gas station on July 18, 2012, in Shelby County. Defendant was indicted for one count of first degree murder, one count of attempted first degree murder, and one count of employment of a firearm during the commission of a dangerous felony.

Mr. Smith and Defendant were friends who had known each other since elementary school. Approximately a week before July 18th, their friendship ended. Mr. Smith had taken $250 from Defendant and was preparing to repay that amount to Defendant using some money from his girlfriend of fourteen years, Lankea Bell. However, before Mr. Smith could give the money to Defendant, Defendant sent Mr. Smith a text message that said, "When I see you and your bitch, I'm going to kill both of you all." After receiving the threatening message, Mr. Smith and Ms. Bell left the place where they were staying and relocated to a different place to live.

Abdul Jones was also a friend of Mr. Smith and Defendant from elementary school. Mr. Jones considered Mr. Smith to be his best friend, and Mr. Smith would frequently visit the home of Mr. Jones's mother, where Mr. Jones lived. A few days before Mr. Smith was killed, Mr. Jones saw Defendant's Mercedes SUV[2] parked on the street facing his mother's house. Mr. Jones signaled Defendant to come talk to him, and Defendant told Mr. Jones that he was looking for Mr. Smith because he wanted to talk to him. Defendant had a pistol in his possession. Mr. Jones knew that there was "beef" between Defendant and Mr. Smith because Mr. Smith owed Defendant money. As soon as Defendant left, Mr. Jones called Ms. Bell and told her that Defendant was looking for Mr. Smith.

On July 18th, Mr. Smith told Ms. Bell that he was going to meet a man named Jeremy Fletcher at a gas station. Mr. Smith had known Mr. Fletcher since elementary school, but Mr. Fletcher was also a close acquaintance of Defendant. Mr. Fletcher was going to use a "gas card" to purchase gas for Mr. Smith in exchange for cash. Around 12:30 p.m., Mr. Smith, Ms. Bell, Mr. Smith's younger sister, Darnesha Smith, and Kevin Miller went to the BP gas station on the corner of Millbranch and Winchester. Mr. Smith was driving a white Dodge Challenger which belonged to Ms. Bell's mother.

---

[2] The SUV belonged to Defendant's girlfriend, but he drove it regularly.

Mr. Smith spoke to Mr. Fletcher on his phone using the speaker, and Mr. Fletcher said that he was at the gas station. After searching and waiting, the group realized that Mr. Fletcher was not actually at the gas station, and they began to suspect that the arrangement might be "a setup." When the group saw Defendant's Mercedes SUV at the intersection, they attempted to leave the gas station.

Stephanie Williams was going to work and driving northbound on Millbranch, approaching the intersection of Winchester, when Defendant's southbound Mercedes SUV quickly cut across her lane of traffic. The SUV was driving "pretty fast" despite the amount of traffic in and around the intersection. The SUV stopped in front of the white Dodge Challenger as it was exiting the BP gas station. The SUV obstructed part of the right hand lane so that Ms. Williams had to change lanes to get around it. Like Ms. Williams, Melody Cooper was also driving on Millbranch and about to turn into the BP gas station when the Mercedes SUV cut her off and stopped abruptly in front of the Challenger. Ms. Cooper went past the SUV and turned into another entrance for the gas station. According to Ms. Bell, if the Challenger had not stopped, their vehicle would have collided with Defendant's SUV.

Defendant displayed a black handgun and then exited the SUV. Mr. Smith got out of the Challenger and began talking to Defendant, who pointed the gun at Mr. Smith's head. Ms. Cooper testified that Mr. Smith was calm and was not threatening Defendant. Mr. Miller also exited the Challenger and attempted to intervene. Ms. Cooper saw Mr. Miller point a handgun at Defendant. Ms. Bell denied that Mr. Miller threatened Defendant and described him as a "peacemaker." Defendant told Mr. Miller to "get out of the way because it didn't have anything to do with him." Mr. Miller moved back, and Defendant kept his gun pointed at Mr. Smith.

During this exchange, Ms. Bell and Ms. Smith also got out of the Challenger in case Defendant started shooting. Mr. Smith told Ms. Bell to give him money to repay Defendant. She complied and passed Mr. Smith $100 from her wallet. Defendant "snatched" the money from Mr. Smith and put it in his pocket. Defendant then "took a couple steps back and started shooting." Ms. Bell saw a police car drive past just before the shooting began.

Ms. Cooper saw Defendant fire the first shot and then she ducked down. She heard several gun shots followed by screaming. Ms. Bell watched Defendant shoot Mr. Smith, but she did not see Defendant shoot Mr. Miller, although she heard Mr. Miller say that he had been shot.

Defendant discarded his weapon under a parked car and fled toward a Coca-Cola truck. Neither Ms. Bell nor Ms. Smith knew Mr. Miller had a gun, but they both saw a

second gun on the ground after the shooting. When Ms. Smith went to her brother, he was nonresponsive.

When Ms. Williams saw Defendant get out of his SUV with a gun, she called 911 and turned her vehicle around so that she could continue observing the confrontation. She heard "rapid" gunshots, but she did not actually see the shooting. As Ms. Williams pulled into a different gas station across street, she saw Defendant run away from the scene then cross a fence.

Officer Torry Watson of the Memphis Police Department was parked in a parking lot on Millbranch when Ms. Williams approached him and informed him that there was a disturbance happening down the street at the BP gas station. Officer Watson drove toward the gas station to see what was happening. As he approached the gas station, he heard multiple gunshots and saw Defendant holding a gun while standing over another man on the ground. Officer Watson exited his vehicle, pointed his sidearm at Defendant, and ordered him to drop his gun. He was approximately five feet away. Defendant discarded his gun and began running.

Officer Hardy Savage of the Memphis Police Department was patrolling on Millbranch near the BP gas station when he heard Officer Watson's broadcast about shots fired. He immediately proceeded to the gas station and arrived within about fifteen seconds. He saw Officer Watson broadcasting the description of the shooter into his radio and gesturing in the direction that the shooter was fleeing. Officer Savage began running in that direction and noticed bystanders pointing to the back of a Coca-Cola delivery truck. He opened the loading door on the back of the truck but did not find anyone. He then opened the cab of the truck and saw Defendant crouching down on the passenger side by the gear shifter. After being arrested, a search of Defendant revealed a one hundred dollar bill and four twenty dollar bills in his pocket.

The crime scene unit of the Memphis Police Department found a loaded .40 caliber Smith & Wesson pistol and an unfired .40 caliber round on the ground near the Challenger. They also found a black .45 caliber High Point pistol underneath a parked red car. The "slide" of the .45 caliber pistol was in the "locked back position," indicating that it had been fired until it was empty. There were nine .45 caliber shell casings and one .45 caliber fired bullet, but no .40 caliber shell casings at the crime scene. Forensic analysis confirmed that the fired bullet and the nine .45 caliber shell casings were fired through the High Point .45 caliber handgun, which also had Defendant's touch DNA on it.

Dr. Miguel Laboy performed the autopsy on Mr. Smith's body. There were four gunshot wounds: one to left side of his head, one to the right forearm, one to the left side of the back, and one to the back of the left leg. The back and leg wounds travelled

upward from left to right suggesting that Mr. Smith was not standing when these wounds were sustained. The back wound alone would have been lethal.

Phone records indicated that Mr. Fletcher was having conversations with both Mr. Smith and Defendant between 12:30 p.m. and 1:00 p.m. Defendant's phone contained a photograph of Ms. Bell's car.

Kevin Miller did not appear to testify at trial despite being subpoenaed. Defendant chose not to testify. The jury convicted Defendant of the lesser included offenses of second degree murder and attempted voluntary manslaughter and also convicted him as charged of employing a firearm during the commission of a dangerous felony. The trial court imposed consecutive sentences of twenty-five years, seven years, and eight years, respectively.

## II. Analysis

Defendant raises the following issues on appeal: (1) whether there was sufficient evidence to support the convictions; (2) whether the trial court erred by admitting hearsay evidence at trial; (3) whether the trial court inaccurately advised Defendant during the *Momon* hearing; (4) whether the trial court erred by refusing to instruct the jury on self-defense; (5) whether the trial court erred by instructing the jury to correct its verdict on employment of a weapon during the commission of a dangerous felony; and (6) whether the trial court abused its discretion during sentencing.

### A. Sufficiency of the Evidence

Defendant argues that the evidence is insufficient to support his convictions. When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of

fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). This standard of review applies whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Second degree murder is a knowing killing of another. T.C.A. § 39-13-210(a)(1). Attempted voluntary manslaughter is an attempt to knowingly kill another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner. T.C.A. § 39-12-101; T.C.A. § 39-13-211(a). Attempted voluntary manslaughter is a dangerous felony during which it is a crime to employ a firearm. T.C.A. § 39-17-1324(b)(2), (i)(1)(C).

Defendant's argument, as articulated in his brief, merely goes to the weight of the evidence and the credibility of witnesses. We will not revisit the jury's resolution of these issues. The evidence shows that Defendant and one of the victims had a dispute over money. On the day of the incident, Defendant sped through traffic to cut off the vehicle carrying the two victims. Defendant waved a handgun and exited his vehicle, demanding money. He then pointed the gun toward one of the victims while both victims tried to resolve the conflict. Defendant took money given to him by one of the victims, then started shooting. He shot the decedent four times, several times while the victim was already down; he shot the other victim once; and he fired at least nine rounds. Defendant then discarded his handgun, fled the scene, and hid inside of a truck. The evidence was not only sufficient, it was overwhelming. Defendant is not entitled to relief on this issue.

## B. Hearsay

Defendant argues that the trial court committed plain error by allowing the State to introduce testimony about a purported text message sent from Defendant to victim Smith. Similarly, Defendant argues that it was plain error for witnesses to offer testimony about the out-of-court statements made by the victims to Defendant just before the shooting occurred. The State maintains that the admission of this evidence was not erroneous.

Ms. Bell testified about a threatening text message that Defendant sent to Mr. Smith about a week before the shooting. Ms. Bell testified, "The text said, 'When I see you and your bitch, I'm going to kill both of you all.'" Ms. Bell saw the text message on Mr. Smith's phone, but Mr. Smith deleted the text message before the shooting occurred.

Defense counsel objected to this testimony but withdrew the objection during the bench conference. Defendant did not raise this issue in his motion for new trial. Accordingly, we review this issue for plain error. *See* Tenn. R. App. P. 3(e). To determine whether a trial error rises to the level of "plain error," the following five factors must be present:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the error [must be] "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Id.* at 283.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). In general, hearsay statements are inadmissible. Tenn. R. Evid. 802.

Because Defendant withdrew his objection to this testimony rather than permitting the trial court to rule on its admissibility, it is not clear that Defendant did not waive this issue for tactical reasons. As such, Defendant has not proven that plain error was committed, and he is not entitled to relief on this basis.

Aside from the text message, on appeal Defendant objects to testimony from Ms. Smith about the following statements made by Mr. Smith to Defendant during the confrontation: "Why are you doing this? This is broad daylight. Put the gun down. What do you want, some money?" Ms. Smith also testified that Mr. Miller made the following statements to Defendant: "You got your money. Just leave. Why you doing this?"

At trial, Defendant did not object to the former statements, but his objection to the latter was overruled. Thus, we review the admission of the former statements for plain error and the admission of the latter under the normal standard of appellate review for evidentiary errors. Whether a statement constitutes hearsay or satisfies a hearsay exception is a question of law which we review de novo. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015).

We agree with the trial court that these statements were not offered for the truth of the matter asserted but for their effect on the listener. This Court has held that statements used to prove the effect on a listener are not hearsay:

> [A]ny time the statement is used to prove the hearer or reader's mental state upon hearing the declaration, words repeated from the witness chair do not fall within the hearsay exclusion. The statement fails the test of hearsay because it is not used to prove the truth of the matter asserted in the statement.

*State v. Carlos Jones*, No. W2008-02584-CCA-R3-CD, 2010 WL 3823028, at *14-15 (Tenn. Crim. App. Sept. 30, 2010) (quoting Neil P. Cohen, et al., *Tennessee Law of Evidence*, § 8.01[7], at 8-23 (5th ed. 2005)); *see generally State v. Venable*, 606 S.W.2d 298, 301 (Tenn. Crim. App. 1980) (noting that the victim's statement was not hearsay because it was offered for its effect on the hearer, the defendant, and established evidence of his motive in returning to the scene of the crime later in the day and threatening the victim).

Regardless of the statements' veracity or suggestions about the beliefs of the declarants, they were offered to prove that both victims were attempting to deescalate the confrontation and to get Defendant to leave them alone. As such, they were offered to show Defendant's conduct or lack thereof after he heard these statements. Defendant's conduct was probative as to his mental state at the time, which was the primary point of contention during the trial. Because these statements were not offered for the truth of the matter asserted, they were admissible evidence, and no error was committed by the trial court. Defendant is not entitled to relief.

### C. *Momon* Hearing

Defendant argues that the trial court improperly advised him that if he testified that he had acted in self-defense, the jury would be instructed that he was engaged in unlawful activity by being a felon in possession of a firearm. Defendant claims that his decision not to testify was not intelligently informed because of this inaccurate statement of the law. The State disagrees.

At the close of the State's proof, Defendant indicated that he would testify. Defense counsel wanted his advice and Defendant's decision to testify to be put on the record, so Defendant was questioned on the stand under oath. During the voir dire, the following occurred:

Trial court:        A couple of things I want to go over with you. You've heard us in the courtroom discuss legal concepts. Are

|  |  |
|---|---|
|  | you aware that our legislature changed the law of self-defense so that you cannot claim self-defense if you're acting illegally at the time you're claiming self-defense? Have you picked that up in this proceeding? |
| Defendant: | I've heard you say that. |
| Trial court: | All right. And you know that you—the jury's out—if a convicted felon is carrying a weapon, that's acting illegally. And so . . . do you understand that you may be about to testify, cutting your own throat? |
| Defendant: | Yes, sir. |
| Trial court: | All right. |
| Defendant: | [W]ill I be able to speak about this, they also were convicted felons on several robberies and thefts of property and burglaries and— |
| Trial court: | That doesn't help you, though, sir. But be that as it may, they're not on trial; you're the one on trial claiming self-defense. They're not trying to claim self-defense. One of them's dead and the other one is not here. You're the only one claiming self-defense, the only one that counts whether you're acting illegally is you. So, I just want your lawyer—one of the reasons you've not seen eye-to-eye with your lawyer, is your lawyer is aware of these legal concepts, and I'm not sure you are. You're lawyer has tried to deal with this case being aware that you were in this Catch-22 where you're trying to claim self-defense. Our legislature passed this law so criminals could not arm themselves with guns and go to events and try to collect debts and then claim, oh, self-defense. It's just the law. It's not your lawyer's fault. That's the law. That's somebody in the legislature that passed that law. . . . |

Ultimately, Defendant decided not to testify.

Because Defendant did not raise this issue in his motion for new trial, we review it for plain error. With regard to self-defense, Tennessee Code Annotated section 39-11-611(b)(2) provides:

> Notwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:
>
> (A) The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;
>
> (B) The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and
>
> (C) The belief of danger is founded upon reasonable grounds.

Tennessee Code Annotated section 39-17-1322 establishes:

> A person shall not be charged with or convicted of a violation under this part if the person possessed, displayed or employed a handgun in justifiable self-defense or in justifiable defense of another during the commission of a crime in which that person or the other person defended was a victim.

Defendant relies on *State v. Deanty Montgomery*, No. E2014-01014-CCA-R3-CD, 2015 WL 3409485 (Tenn. Crim. App. May 28, 2015), *perm. app. denied* (Tenn. Oct. 15, 2015), to support his argument that the trial court inaccurately advised him of the law. In that case, this Court explained:

> [T]he issue of whether one was engaged in justifiable self-defense while unlawfully possessing a weapon does not equate to the issue of whether one was engaged in "unlawful activity" for the purposes of the self-defense statute requiring a duty to retreat. If we were to permit the State to argue that a felon in possession of a weapon asserting self-defense, without more, could satisfy the definition of "unlawful activity," such an interpretation would nullify the defense set forth in section 39-17-1322, leading to an absurd result. Accordingly, the State should not have been permitted to argue that the Defendant's conduct, a convicted felon for a drug offense arming himself with a weapon prior to the shooting, standing alone, could have formed the basis for the jury to conclude that the Defendant was engaged in "unlawful activity" for the purposes of the self-defense statute requiring a duty to retreat.

-10-

*Id.* at *7. However, *Deanty Montgomery* was decided after the trial in this case occurred. Prior to trial, this Court had previously indicated that being a felon in possession of a firearm could constitute unlawful activity for purposes of the self-defense statute. *See State v. Anthony Henvey*, No. W2013-00654-CCA-R3-CD, 2014 WL 2566487, at *14 (Tenn. Crim. App. June 5, 2014) (finding that an error in the jury's self-defense instruction was harmless where the record established that the defendant was a felon in possession of a handgun at the time of the crime and was, therefore, engaged in unlawful activity). Thus, at the time of the trial, the trial court's advisement to Defendant was not a breach of a clear and unequivocal rule of law. *See Smith*, 24 S.W.3d at 282. Accordingly, Defendant cannot prove plain error and is not entitled to relief on this basis.

## D. Jury Instruction

Defendant argues that the trial court erred by refusing to instruct the jury on self-defense. The State contends that self-defense was not fairly raised by the evidence. We agree with the State.

It is well-recognized that a defendant in a criminal case "has a right to a correct and complete charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000); *see State v. Leath*, 461 S.W.3d 73, 105 (Tenn. Crim. App. 2013). When reviewing jury instructions on appeal to determine whether they are erroneous, this Court must "review the charge in its entirety and read it as a whole." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997). A jury instruction is considered "prejudicially erroneous," only "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *Id*. Because the propriety of jury instructions is a mixed question of law and fact, the standard of review is de novo with no presumption of correctness. *Carpenter v. State*, 126 S.W.3d 879, 892 (Tenn. 2004); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

Self-defense is a question of fact for the jury. *State v. Echols*, 382 S.W.3d 266, 283 (Tenn. 2012). "[I]f admissible evidence fairly raises its applicability, the trial court is required to submit the defense to the jury." *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007). To determine whether a self-defense instruction is raised by the evidence, the court "must examine the evidence in the light most favorable to the defendant to determine whether there is evidence that reasonable minds could accept as to that defense." *State v. Sims*, 45 S.W.3d 1, 9 (Tenn. 2001).

Tennessee Code Annotated section 39-11-611(e)(2) provides that "[t]he threat or use of force against another is not justified . . . [i]f the person using force provoked the other individual's use or attempted use of unlawful force, unless: (A) [t]he person using

force abandons the encounter or clearly communicates to the other the intent to do so; and (B) [t]he other person nevertheless continues or attempts to use unlawful force against the person[.]" Examining the evidence in the light most favorable to Defendant, reasonable minds could not have accepted a theory of self-defense based on the State's proof. All of the evidence indicated that Defendant was the initial aggressor in the confrontation and that his display of a weapon was what provoked Mr. Miller to also display a weapon. There was no evidence that Defendant attempted to abandon the encounter once he saw Mr. Miller's weapon. Under those circumstances, Defendant cannot claim that he acted in self-defense when his conduct provoked the opposing threat, and he made no effort to retreat. Because self-defense was not raised by the proof, the trial court did not err by refusing to provide such a jury instruction. Defendant is not entitled to relief on this basis.

## E. Verdict

Defendant argues that the trial court erred by twice requiring the jury to correct its verdict on the charge of employing a firearm during the commission of a dangerous felony. The State disagrees.

After deliberating, the jury returned to the courtroom with its verdicts. The trial court reviewed the verdict form and realized that the jury found Defendant guilty of employing a firearm but had failed to identify the dangerous felony from its verdict on the second count, despite the jury instructions requiring the jury to do so. The trial court sent the jury back to complete its verdict. When the jury returned, its verdict read, "We, the jury, find the defendant guilty of employing a firearm in the commission of a dangerous felony as charged in the second count of the indictment, and we unanimously find that the dangerous felony was attempted voluntary manslaughter." However, the firearm charge was the third count rather than the second count, and the form language should have conveyed the verdict as to the third count as charged without reference to the second. This language on the verdict form was an oversight by the trial court and the parties. Out of an abundance of caution, the trial court sent the jury back to fill out its verdict without reference to any of the counts. The jury complied with this request and returned with the same verdict.

Defendant did not object to the trial court's action at trial and did not raise the issue in his motion for new trial. On appeal, Defendant has not clearly articulated the reason why he believes the trial court erred on this issue. In his appellate brief, he points out that the State did not identify the underlying dangerous felony in the indictment but does not explain how that omission is relevant to the trial court's action with regard to the jury's verdict. To the extent that this is the basis of his argument, there was not a violation of a clear and unequivocal rule of law because the issue of the State's failure to identify and elect the underlying dangerous felony is currently before our supreme court.

*See State v. Willie Duncan*, No. W2013-02554-CCA-R3-CD, 2014 WL 4243746 (Tenn. Crim. App. Aug. 27, 2014), *perm. app. granted* (Tenn. Feb. 13, 2015). Additionally, we note that only one of the two underlying offenses constitutes a dangerous felony, and the jury instructions indicated that the employment of a firearm charged was based on the charge of attempted first degree murder.

Defendant also complains about the wording of the jury instructions being confusing, but he has not cited any authority suggesting that the trial court crafted an inaccurate instruction or otherwise did anything improper by sending the jury back to complete and correct the verdict form. Other than the mistaken reference noted above, the jury instruction was an accurate statement of the law, and we cannot say that it was prejudicially erroneous. Furthermore, "[t]he trial judge has both the power and duty to require that the jury correct or amend an improper or incomplete verdict." *Jones v. State*, 569 S.W.2d 462, 464 (Tenn. 1978). We find no error here by the trial court for ensuring that the jury's verdict was complete and correct. Defendant is not entitled to relief.

F. Sentencing

Defendant argues that the trial court abused its discretion by not imposing minimum sentences on his convictions and by ordering consecutive sentences. The State disagrees.

Second degree murder is a class A felony. T.C.A. § 39-13-210(c). Attempted voluntary manslaughter is a Class D felony. T.C.A. § 39-12-107(a); T.C.A. § 39-13-211(b). Employing a firearm during the commission of a dangerous felony while having a prior felony conviction is a Class C felony. T.C.A. § 39-17-1324(h). Defendant was sentenced as a standard offender for the murder conviction, which made the range fifteen to twenty-five years. T.C.A. § 40-35-112(a)(1). Defendant was sentenced as a multiple offender for the other convictions, which made the ranges four to eight years and six to ten years, respectively. T.C.A. § 40-35-112(b)(3)-(4). The trial court imposed consecutive sentences of twenty-five years for second degree murder, seven years for attempted voluntary manslaughter, and eight years for employing a firearm during the commission of a dangerous felony, for an effective sentence of forty years to the Department of Corrections.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal

-13-

standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. § 40-35-102, -103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

This Court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The misapplication of an enhancement or mitigating factor by the trial court "does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706.

Defendant's sentences are within the applicable ranges. The trial court identified several enhancing factors on the record and considered the principles and purposes of the Sentencing Act. Defendant had one prior felony and one prior misdemeanor drug conviction in addition to a prior felony conviction for aggravated assault. Defendant was on probation at the time of the offense and previously had a sentence of probation revoked. The trial court did not find that any mitigating factors were applicable. Based on the record, the trial court did not abuse its discretion in determining the length of Defendant's sentences.

Our supreme court has held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations" "if [the trial court] has provided reasons on the record establishing at least one of the seven

-14-

grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *State v. Pollard*, 432 S.W.3d 851, 859-62 (Tenn. 2013). In other words, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" T.C.A. § 40-35-103(2), (4). Further, "[s]o long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1) ("The order [for consecutive sentences] shall specify the reasons for this decision and is reviewable on appeal.")); *see also Bise*, 380 S.W.3d at 705.

When consecutive sentencing is imposed based upon the dangerous offender classification, *see* T.C.A. § 40-35-115(b)(4), the record must also demonstrate that the total sentence is "reasonably related to the severity of the offenses" and "necessary in order to protect the public from further criminal acts" by the defendant. *Pollard*, 432 S.W.3d at 863; *see also State v. Wilkerson*, 905 S.W.2d 933, 939 (Tenn. 1995). "The need for the additional findings before imposing consecutive sentencing on the basis of the 'dangerous offender' provision arises, in part, from the fact that this category 'is the most subjective and hardest to apply.'" *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999)).

As an initial matter, we observe that the sentence for employment of a firearm is statutorily required to be consecutive to the sentence for the accompanying dangerous felony conviction. T.C.A. § T.C.A. § 39-17-1324(e)(1). As for the other two convictions, the trial court made the requisite *Wilkerson* findings to support its determination that Defendant is a dangerous offender. The trial court found that Defendant's behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high based on the fact that many other people were exposed to a serious risk of harm at the scene. The trial court also found that extended confinement was necessary to protect society from Defendant's behavior and that consecutive confinement was reasonably related to the underlying offenses. The record supports the trial court's findings on this issue. Defendant is not entitled to relief.

Although not raised by either party, we note that Defendant's eight-year sentence for employment of a firearm is illegal because it directly contravenes an applicable statute. At the sentencing hearing, the parties and the trial court agreed that the sentencing range was six to ten years. As stated above, this is true for a multiple offender convicted of a class C felony. However, the employment of a firearm statute specifically states that "if the defendant, at the time of the offense, had a prior felony conviction," then the mandatory minimum sentence is ten years. T.C.A. § 39-17-1324(h)(2). The

statute limits eligible prior convictions to those "for the commission of a dangerous felony." T.C.A. § 39-17-1324(i)(2)(A). At the time of these offenses, Defendant had two prior felony convictions—one for aggravated assault and one for possession of marijuana with intent to sell. The latter is an enumerated dangerous felony. T.C.A. § 39-17-1324(i)(1)(L) ("'Dangerous felony' means . . . [a] felony involving the sale, manufacture, distribution or possession with intent to sell, manufacture or distribute a controlled substance . . . as defined in part 4 of this chapter[.]"). Accordingly, we remand this case to the trial court for entry of an amended judgment in count three, reflecting the legally required sentence of ten years, for an effective sentence of forty-two years.

### III. Conclusion

Based on the foregoing, the judgments of the trial court are affirmed in part and modified in part.

_____
TIMOTHY L. EASTER, JUDGE